UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BAMBI BABY.COM CORP.,<br><br>          Plaintiff,<br>   v.<br><br>MADONNA VENTURES, INC. and INSPIRATION BY STERLING, INC.,<br><br>          Defendants. | **OPINION**<br>Civ. No. 18-12669-WHW-CLW |

**Walls, Senior District Judge**

In this unfair competition action, Defendant Madonna Ventures, Inc. ("Madonna") moves to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). ECF No. 23. Plaintiff Bambi Baby.com Corp. ("Bambi Baby" or "Plaintiff") opposes. ECF No. 32. Decided without oral argument under Federal Rule of Civil Procedure 78, the motion to dismiss is granted in part and denied in part.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff began this action with an August 10, 2018 complaint. ECF No. 1. An Amended Complaint followed on February 21, 2019. ECF No. 22. The Amended Complaint alleges that Madonna and Defendant Inspiration by Sterling, Inc. ("Sterling"; with Madonna, "Defendants")[2] copied the "look and feel" of Plaintiff's website, and in so doing infringed Plaintiff's intellectual property. Am. Compl. ¶¶ 7-9.

---

[1] Unless stated otherwise, all facts are drawn from Bambi Baby's Amended Complaint ("Am. Compl."), ECF No. 22. These facts are taken as true for the purpose of Madonna's motion. *See Cuevas v. Wells Fargo Bank, N.A.*, 643 F. App'x 124, 125-26 (3d Cir. 2016) (quoting *McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)) ("[I]n deciding a motion to dismiss, all well-pleaded allegations . . . must be taken as true and interpreted in the light most favorable to the plaintiffs, and all inferences must be drawn in favor of them.").

[2] Sterling has not responded to the Amended Complaint, and, upon Plaintiff's request, ECF No. 33, the Clerk of the Court entered default against Sterling on May 20, 2019.

1

Bambi Baby is a family-owned furniture store in West New York, New Jersey, which has done business for over 30 years and ships baby furniture across the country. Am. Compl. ¶ 10. Bambi Baby's website—located at www.bambibaby.com (the "Bambi Baby Website")—was designed in its current format in 2014. *Id.* ¶¶ 7, 11. Plaintiff invested substantial resources in developing its website, where it interacts with most of its customers. *Id.* ¶¶ 12, 13.

According to Plaintiff, its website's "distinctive visual design, graphic treatment, and familiar interface [] has become readily identifiable by the consuming public as originating from Bambi Baby." Am. Compl. ¶ 20. Bambibaby.com features "distinctive and innovative" trade dress that "is warm and inviting" and "exemplifies the business and values of Bambi Baby." *Id.* ¶¶ 19, 21. Plaintiff identifies three elements that "together and in combination" constitute distinctive trade dress:

> (a) A distinctive palette of colors and image/video filters featuring a clean, modern, and straightforward user interface highlighted by bright, vibrant colors set in an environment/backdrop of warm, baby tones;
> (b) A home page display featuring an assortment of products needed by new parents that seeks to quickly affirm to Bambi Baby's customers that they've landed in the right place; and
> (c) The consistent placement and location of certain user options and the company's logo on each and every page of the Bambi Baby Website.

*Id.* ¶ 21.

Plaintiff alleges that Defendants infringed that trade dress. Am. Compl. ¶¶ 26-49. Defendants own and operate a business called Treasure Rooms, which sells baby furniture from a store in Missouri. *Id.* ¶¶ 26, 27. Treasure Rooms also sells baby furniture to customers nationwide from its website—www.treasurerooms.com (the "Treasure Rooms Website")— which Madonna owns. *Id.* ¶¶ 5, 26, 28; *id.* Ex. A.[3] Plaintiff contends that Defendants began

---

[3] Bambi Baby alleges that Madonna owns the Treasure Rooms Website but that both Defendants operate it. Am. Compl. ¶¶ 28, 29.

infringing on the Bambi Baby intellectual property as soon as they relaunched the Treasure Rooms Website on April 12, 2018. *Id.* ¶ 29. Specifically, Bambi Baby alleges that the Treasure Rooms Website copies from the Bambi Baby site:

(1) the "look and feel" of Plaintiff's website, "utilizing strikingly and confusingly similar layouts and design elements, including the placement of photographs, colors, borders, frames, interactive elements, and overall mood, style, and impression, *id.* ¶ 31;

(2) digital photographs created in part by Plaintiff and showing furniture for sale by Plaintiff, *id.* ¶ 32;

(3) Bambi Baby's "Tool-Tips" graphic, which "provides Bambi Baby's customers with detailed descriptions of various items on its website," *id.* ¶¶ 7, 33;

(4) "banner advertisements and landing pages," such as one showing a 15% off Memorial Day sale, *id.* ¶ 34; and

(5) the "unique" shipping methods and services "and the descriptions of such services" offered by Plaintiff, *id.* ¶¶ 35, 36, Exs. B, C.

Bambi Baby's counsel sent Defendants a cease and desist letter identifying the alleged infringement on May 22, 2018. Am. Compl. ¶ 46; *id.* Ex. D. Madonna's counsel responded a week later that the items identified in Plaintiff's letter "have been addressed," but Plaintiff asserts that the infringement continues. *Id.* ¶ 47. Plaintiff now brings six claims against both Defendants:

(i) copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 101, *et seq.* (Count 1);

(ii) unfair competition under New Jersey's Unfair Competition Act, N.J.S.A. 56:4-1, *et seq.* (Count 2);

    (iii)    trade dress infringement under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (Count 3);

    (iv)    false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 (Count 4);

    (v)    common law trademark infringement (Count 5); and

    (vi)    common law tortious interference (Count 6).

Am. Compl. ¶¶ 50-92.

## STANDARD OF REVIEW

Rule 12(b)(6) allows for dismissal where the non-moving party fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—that the pleader is entitled to relief." *Id.* at 679.

In assessing a plaintiff's claims, a district court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint. *See Sentinel Trust Co. v. Universal Bonding Ins. Co.*, 316 F.3d 213, 216 (3d Cir. 2003); Charles A. Wright & Arthur R. Miller, 5B Fed. Prac. & Proc. Juris. § 1357 (3d ed. 2004). "A 'document

4

integral to or explicitly relied on in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

## DISCUSSION

### 1. Copyright Infringement (Count 1)

Madonna and Bambi Baby previously agreed to dismiss Bambi Baby's copyright infringement claim (Count 1). ECF Nos. 29, 30. Madonna's motion to dismiss that count is denied as moot.

### 2. Trade Dress Infringement (Count 3)

Bambi Baby claims that Defendants are infringing its trade dress, which Bambi Baby describes as:

> (a) A distinctive palette of colors and image/video filters featuring a clean, modern, and straightforward user interface highlighted by bright, vibrant colors set in an environment/backdrop of warm, baby tones;
> (b) A home page display featuring an assortment of products needed by new parents that seeks to quickly affirm to Bambi Baby's customers that they've landed in the right place; and
> (c) The consistent placement and location of certain user options and the company's logo on each and every page of the Bambi Baby Website.

Am. Compl. ¶ 21.

Lanham Act Section 43(a)(1)(A) bars

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]

5

15 U.S.C. § 1125(a)(1)(A). This provision "broadly prohibits uses of trademarks, trade names, and trade dress that are likely to cause confusion about the source of a product or service. Infringement law protects consumers from being misled by the use of infringing marks and also protects producers from unfair practices by an 'imitating competitor.'" *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 428 (2003) (citations omitted).

"Trade dress has been defined as the total image or overall appearance of a product, and includes, but is not limited to, such features as size, shape, color or color combinations, texture, graphics, or even a particular sales technique." *Rose Art Indus., Inc. v. Swanson*, 235 F.3d 165, 171 (3d Cir. 2000). Put another way, "trade dress is the overall look of a product or business." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 (3d Cir. 2014). "The purpose of trade dress protection is to 'secure the owner of the trade dress the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.'" *McNeil Nutritionals, LLC v. Heartland Sweeteners, LLC*, 511 F.3d 350, 357 (3d Cir. 2007) (quoting *Shire U.S. Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 353 (3d Cir. 2003)).

To state a claim for trade dress infringement under Section 43(a), a plaintiff must allege: "1) the allegedly infringing design is non-functional, 2) the design is inherently distinctive or has acquired secondary meaning, and 3) consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *Id.* (citation omitted). The Court will review these elements in turn.

  a. Functionality

Trade dress protection "may not be claimed for product features that are functional." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29 (2001). Indeed, much trade dress is functional, as the Supreme Court explained: "product design almost invariably serves purposes

other than source identification[.]" *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 213 (2000). The Supreme Court has defined functional trade dress as that which (1) "is essential to the use or purpose of the article"; (2) "affects the cost or quality of the article"; or (3) would, if denied to others, "put competitors at a significant non-reputation-related disadvantage." *TrafFix*, 532 U.S. at 33 (internal citations omitted).

Madonna contends that Plaintiff's claimed trade dress—at least the portion enumerated in paragraphs 21(b) and (c) of the Amended Complaint—is functional and unprotectable. ECF No. 23-1 (Madonna Mot. Br.) at 12-13. Plaintiff responds that "the functionality test is lessened" when dealing with websites, and so the Bambi Baby trade dress is non-functional. ECF No. 32 (Pl. Opp. Br.) at 6-7 (citing *Ingrid & Isabel, LLC v. Baby Be Mine, LLC*, 70 F. Supp. 3d 1105, 1137 (N.D. Cal. 2014)). One court in Pennsylvania agrees with Plaintiff, *Conference Archives, Inc. v. Sound Images, Inc.*, No. CIV. 3:2006-76, 2010 WL 1626072, at *17 (W.D. Pa. Mar. 31, 2010) ("[c]oncerns about the monopolization [of functional features] are minimized in the context of web sites"), but the Third Circuit has not spoken on this point. *See Fair Wind Sailing*, 764 F.3d at 310-11 (ruling website trade dress functional without discussing whether functionality test is altered for websites).

Under any standard, the trade dress identified in paragraphs 21(b) and (c)—"A home page display featuring an assortment of products needed by new parents that seeks to quickly affirm to Bambi Baby's customers that they've landed in the right place," and "The consistent placement and location of certain user options and the company's logo on each and every page of the Bambi Baby Website," respectively—is functional. The home page design that affirms that customers are "in the right place" plainly "is essential to the use or purpose" of Bambi Baby's website. *TrafFix*, 532 U.S. at 33. A consumer cannot use the website to purchase baby furniture

without knowing that Bambi Baby's site sells baby furniture. And this home page "feature" is common to nearly every retail website: how can a consumer use www.ikea.com to buy a mattress without knowing that IKEA's site sells mattresses? Features that identify for website visitors the products sold on that website are functional.

Likewise "[t]he consistent placement and location of certain user options and the company's logo on each and every page of the Bambi Baby Website[.]" Am. Compl. ¶ 21(c). Bambi Baby does not specify which "user options" it seeks to protect, nor the actual "location[s]" of these options and the Bambi Baby logo on its webpage. The Court's review of the Bambi Baby Website[4] revealed several features that appear in the same place on all pages: (1) the Bambi Baby logo in the top left corner; (2) a search bar placed prominently in the middle of the page, directly to the right of the Bambi Baby logo; (3) a gift box icon labelled "My Registry" and five yellow stars indicating "5 Star Customer rating," both to the right of the search bar; (4) a tool bar underneath the search bar with drop-down menus allowing visitors to "Shop By Brand," "Shop By Style," or browse specific categories of Bambi Baby products, like "Cribs" and "Car Seats"; (5) a "REVIEWS" tab on the left edge of the page that pops out "REAL REVIEWS FROM REAL SHOPPERS"; (6) a pop-up chat window in the bottom right corner of the page that allows visitors to contact Bambi Baby; (7) a box in the bottom left corner showing Bambi Baby's Google Customer Reviews rating; and (8) an index at the very bottom, featuring various "About Bambi Baby" pages, contact information, and links to the categories of Bambi Baby merchandise.[5]

---

[4] The Court accessed the Bambi Baby Website for this analysis on May 17, 2019.
[5] The Court may consider the contents of the Bambi Baby Website because it is "integral" to the Amended Complaint. *See Mele*, 359 F.3d at 256 n.5; *Edelman v. Croonquist*, No. CIVA 09-1938 (MLC), 2010 WL 1816180, at *1 (D.N.J. May 4, 2010) (considering information on "website discussed in the Amended Complaint"). *See also* Am. Compl. ¶¶ 7 (defining "Bambi Baby Website" and giving URL), 32 (including screen shot of Bambi Baby Website). The Court is not taking judicial notice of facts stated on the Bambi Baby Website because it is "a party's unauthenticated marketing material[.]" *Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007), *as amended*

Several of these features are absent from the Treasure Rooms Website—namely, the gift box and five star icons (feature number 3) the tool bar (feature number 4), the "REVIEWS" tab (feature number 5), and the box with a Google rating (feature number 7).[6] The other four consistent features of the Bambi Baby Website appear in the same locations on the Treasure Rooms Website—but each is functional and unprotectable.

Like Plaintiff's website, Defendants'[7] features a logo in the top left corner of each page (feature number 1). This placement is functional, though, as placing a company logo at the top of a website enables visitors to know whose website they have reached. And this Court is unwilling to grant Bambi Baby a monopoly on putting its logo in the top left corner, which would "put competitors at a significant non-reputation-related disadvantage" given the dearth of other options to usefully place a logo. *TrafFix*, 532 U.S. at 33; *see also Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 380 (2d Cir. 1997) (observing that "granting trade dress protection to an ordinary product design would create a monopoly in the goods themselves"). The Treasure Rooms Website also has a search bar at the top of the page near the middle (feature number 2), but this too is functional: nearly every e-commerce site has a search bar in the same location because searching is a useful way to navigate complex websites. Each website has a pop-up chat window in the bottom right corner (feature number 6), a useful feature for quickly getting in touch with Bambi Baby or Defendants. And both sites have similar indices— including "about us" sections, links to product-specific sections within the sites, and buttons for

---

(Nov. 20, 2007) ("Anyone may purchase an internet address, and so, without proceeding to discovery or some other means of authentication, it is premature to assume that a webpage is owned by a company merely because its trade name appears in the uniform resource locator.").
[6]  The Treasure Rooms Website is integral to the Amended Complaint, *see* note 5 *supra*, Am. Compl. ¶¶ 5, 32, so the Court may consider it along with the Bambi Baby Website.
[7]  The Court assumes that the Treasure Rooms Website is at least partially attributable to Sterling, as alleged by Bambi Baby. *See, e.g.*, Am. Compl. ¶ 29 (asserting that "Defendants re-launched the Treasure Rooms Website" (emphasis added))

each company's social media pages—at the bottom of the respective webpages (feature number 8). This is another near-universal e-commerce feature that allows potential customers to interact directly with vendors.

In sum, the four features located similarly on both Plaintiff's and Defendants' webpages are functional. And the other four features "consistent[ly] place[d]" throughout the Bambi Baby Website are absent or placed differently on the Treasure Rooms Website, so Defendants cannot infringe Plaintiff's purported trade dress as to those features. Bambi Baby does not state a claim for infringement of this aspect of its trade dress—"[t]he consistent placement and location of certain user options and the company's logo on each and every page of the Bambi Baby Website[.]" Am. Compl. ¶ 21(c).

Finally, the trade dress identified in Amended Complaint paragraph 21(a)—"A distinctive palette of colors and image/video filters featuring a clean, modern, and straightforward user interface highlighted by bright, vibrant colors set in an environment/backdrop of warm, baby tones"—is not functional. Madonna nearly admits as much, Madonna Mot. Br. at 12, and for good reason. Bambi Baby is not seeking a monopoly on all forms of selling baby furniture using "bright, vibrant colors set in an environment/backdrop of warm, baby tones," but instead only on the way Bambi Baby uses that color palette on its webpage. Am. Compl. ¶¶ 73, 75 (taking issue with "Defendants' unauthorized use of the 'look and feel' of the Bambi Baby Website[.]"). Indeed, nothing about Bambi Baby's color palette is "essential to the use or purpose of the" website, nor does it "affect [its] cost or quality." *TrafFix*, 532 U.S. at 33. This aspect of Bambi Baby's claimed trade dress is not functional.

### b. Inherent Distinctiveness or Secondary Meaning

The "look and feel" of the Bambi Baby Website is only protectible if it is distinctive. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 207 (2000) ("decid[ing] under what circumstances a product's [trade dress] is distinctive, and therefore protectible"). Distinctiveness arises in one of two ways: "First, [trade dress] is inherently distinctive if [its] intrinsic nature serves to identify a particular source[.] Second, [trade dress] has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning[.]" *Id.* at 210-11 (citations omitted). Secondary meaning "occurs when, in the minds of the public, the primary significance of a [trade dress] is to identify the source of the product rather than the product itself." *Id.* at 211; *see also Ideal Toy Corp. v. Plawner Toy Mfg. Corp.*, 685 F.2d 78, 82 (3d Cir. 1982) ("When the primary significance of the trade dress to a consumer is in designating not the product but its producer, the trade dress has acquired secondary meaning").

Plaintiff pleads that its trade dress "is inherently distinctive as applied to its products," and, in the alternative, "has acquired secondary meaning[.]" Am. Compl. ¶ 8. Indeed, Bambi Baby refers to its website interface as "distinctive" repeatedly throughout its Amended Complaint. *Id.* ¶¶ 20, 21, 67. As to the only remaining piece of potentially protectible trade dress, Plaintiff asserts that it uses "[a] distinctive palette of colors and image/video filters featuring a clean, modern, and straightforward user interface highlighted by bright, vibrant colors set in an environment/backdrop of warm, baby tones[.]" *Id.* ¶ 21(a). Madonna counters that the allegations of distinctiveness and secondary meaning are conclusory, Madonna Mot. Br. at 11 ("Of course, merely describing elements of a website design as 'distinctive and innovative' does not make them so, no matter how many times the words 'distinctive' is repeated."), and too vague to be protectible, *id.* ("In terms of actual information, however, ¶ 21 (a) does nothing more

than allege that Bambi Baby has an attractive website utilizing 'baby tone.'"). Bambi Baby disagrees, arguing that Defendant "has unquestionably copied the [website's] screen display, command buttons, icons, and distinctive use of text, graphics, and colors." Pl. Opp. Br. at 7.

The Amended Complaint adequately pleads that the Bambi Baby Website has acquired secondary meaning. While the Amended Complaint nakedly labels the Bambi Baby Website as "distinctive" on several occasions, it also does more. Bambi Baby alleges that its website trade dress has become recognized by consumers "as a symbol of Bambi Baby[.]" Am. Compl. ¶ 68. Plaintiff further asserts that its website "incorporates a distinctive visual design, graphic treatment, and familiar interface that has become readily identifiable by the consuming public as originating from Bambi Baby." *Id.* ¶ 20 (emphasis added). This is a classic allegation of secondary meaning, which means that trade dress "has come through use to be uniquely associated with a specific source." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 766 n.4 (1992) (quoting Restatement (Third) of Unfair Competition § 13, Comment e (Tent. Draft No. 2, Mar. 23, 1990)); *accord Xtreme Caged Combat v. ECC Fitness*, No. 12-CV-3855, 2012 WL 5893970, at *5 (E.D. Pa. Nov. 21, 2012) (plaintiffs adequately alleged secondary meaning by pleading that trademark was advertised to the public as representing services "specifically" offered by trademark owner). Bambi Baby has adequately alleged secondary meaning.

    c. Likelihood of Confusion

Plaintiff must finally allege that "consumers are likely to confuse the source of the plaintiff's product with that of the defendant's product." *McNeil Nutritionals*, 511 F.3d at 357. Madonna does not contend that Bambi Baby has failed to satisfy this element, instead confining its arguments to functionality and lack of distinctiveness/secondary meaning. *See* Madonna Mot. Br. at 10-13.

"A likelihood of confusion exists when consumers viewing the defendant's trade dress probably would assume that the product it represents is associated with the source of a different product identified by the plaintiff's similar trade dress." *McNeil Nutritionals,* 511 F.3d at 357 (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 237 F.3d 198, 211 (3d Cir. 2000)). The likelihood of confusion inquiry is a question of fact. *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,* 166 F.3d 191, 194 (3d Cir. 1999).

Bambi Baby adequately alleges likelihood of confusion between its website trade dress and that on Defendants' site. Plaintiff states that "the configuration of and overall impression created by the Treasure Rooms Website is confusingly similar to the configuration of and overall impression created by the Bambi Baby Website." Am. Compl. ¶ 40. Bambi Baby further claims that Defendants' use of its trade dress "is likely to cause consumer confusion and mistake, and to deceive consumers as to the source, origin, or affiliation of Defendants' products and services." *Id.* ¶ 73. Taking these allegations as true, Bambi Baby has adequately alleged likelihood of confusion.

Plaintiff has stated a claim under Lanham Act Section 43(a) for trade dress infringement as to its website's "distinctive palette of colors and image/video filters featuring a clean, modern, and straightforward user interface highlighted by bright, vibrant colors set in an environment/backdrop of warm, baby tones[.]" Am. Compl. ¶ 21(a).

### 3. False Advertising (Count 4)

Section 43(a)(1)(B) of the Lanham Act provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which— . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or

commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B). To plead a Lanham Act claim for false advertising, a plaintiff must allege:

> 1) that the defendant has made false or misleading statements as to his own product or another's;
> 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience;
> 3) that the deception is material in that it is likely to influence purchasing decisions;
> 4) that the advertised goods traveled in interstate commerce; and
> 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

*Warner–Lambert Co. v. Breathasure, Inc.*, 204 F.3d 87, 91-92 (3d Cir. 2000).

Bambi Baby alleges that Defendants' advertising and promotion, as embodied on the Treasure Rooms Website, constitutes "false designation of origin," "false and misleading description of fact," and "false and misleading representation of fact[.]" Am. Compl. ¶ 81. Madonna argues that this claim is not cognizable under Section 43(a)(1)(B) "[b]ecause the only 'quality' alleged by plaintiff to have been misrepresented by defendant is the 'quality' of being Bambi Baby[.]" Madonna Mot. Br. at 14. Plaintiff responds, not by disputing Madonna's point of law, but instead by tacitly conceding Madonna's point of fact: "Bambi Baby satisfies the first prong by alleging that Defendant published, through its website, false and misleading information relating to its affiliation with Bambi Baby." Pl. Opp. Br. at 13. The only "false and misleading description of fact" or "false and misleading representation of fact," Am. Compl. ¶ 81, is that Treasure Rooms is associated with Bambi Baby.

This fails to state a claim for false advertising. Madonna's argument is based on *Parks LLC v. Tyson Foods, Inc.*, in which the plaintiff's false advertising claim "depend[ed] upon the purported false association between [defendant's] brand and [plaintiff's] mark. 863 F.3d 220,

227 (3d Cir. 2017) (quoted in Madonna Mot. Br. at 14). In *Parks*, as here, "the primary argument [plaintiff] advances is that the [defendant's marketing] falsely implies that [defendant]'s product is one of [plaintiff]'s products." *Id.* The Third Circuit affirmed dismissal of the false advertising count because "none of [plaintiff's] grievances concern the 'nature, characteristics, qualities, or geographic origin' of" defendant's goods—it was "a false association claim and nothing more." *Id.* at 227-30. So too here. Bambi Baby does not allege that Defendants misrepresented any characteristics of their products or of their website. Consequently, Bambi Baby has not stated a claim for false advertising.

### 4. Unfair Competition (Count 2)

New Jersey's statutory unfair competition law provides, "No merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." N.J.S.A. 56:4-1. The elements of an unfair competition claim under New Jersey law are the same as those under Lanham Act Section 43(a). *See Cancer Genetics, Inc. v. Hartmayer*, No. CIV. 07-5463(FSH), 2008 WL 323738, at *9 (D.N.J. Feb. 5, 2008) (citing *American Tel. and Tel. Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994)). To state a claim for unfair competition under either statute, a plaintiff must allege that "(1) the mark at issue is valid and legally protectable; (2) the mark is owned by the plaintiff; (3) the defendant used the mark in commerce on or in connection with any goods or services or container for goods; and (4) this 'use' was in a manner likely to create confusion concerning the origin of the goods or services." *Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 318 (D.N.J. 2006). When trade dress is at issue, the above elements pertain to the plaintiff's trade dress rather than its trademark. *See Versa Prod. Co. v. Bifold Co. (Mfg.)*, 50 F.3d 189, 205 (3d Cir. 1995)

(analyzing unfair competition claim based on trade dress rather than trademark infringement using similar elements); *Knorr-Nahrmittel A.G. v. Reese Finer Foods, Inc.*, 695 F. Supp. 787, 793 (D.N.J. 1988) ("the essence of trade dress is to function as a trademark").

Madonna argues that Bambi Baby's unfair competition claim is just a repackaging of its now-dismissed copyright infringement claim, and that it seeks protection for its unprotectible "shipping methods and services[.]" Madonna Mot. Br. at 6-7. Plaintiff counters that it is not seeking unfair competition protection for its allegedly copyrightable images or its "shipping methods and services"—but instead for the website trade dress that it claims Defendants infringed. *See* Pl. Opp. Br. at 11-13 ("The issue before this case is whether Defendant's admitted copying of Bambi Baby's website constitutes improper use of Bambi Baby's mark and trade dress."). Bambi Baby argues that by adequately pleading trade dress infringement, it also stated a claim for unfair competition. *Id.* at 12.

Bambi Baby is right. Plaintiff has pled all four elements of its unfair competition cause of action as to the trade dress identified in paragraph 21(a) of the Amended Complaint—"A distinctive palette of colors and image/video filters featuring a clean, modern, and straightforward user interface highlighted by bright, vibrant colors set in an environment/backdrop of warm, baby tones[.]"

As explained, Bambi Baby alleges it developed protectible, non-functional trade dress on its website. *See* Am. Compl. ¶¶ 11-15 (discussing development and ownership of trade dress on Bambi Baby Website). Plaintiff also claims that Defendants' used confusingly similar trade dress on the Treasure Room Website. *See id.* ¶¶ 40 ("the Treasure Rooms Website is confusingly similar to the configuration of and overall impression created by the Bambi Baby Website"), 41 ("Defendants' misappropriation and use of the Bambi Baby trade dress is intended

to cause consumers to mistakenly believe that the products and services offered on the Treasure Rooms Website are provided by or associated with Bambi Baby."). These allegations state a claim for Lanham Act trade dress infringement, and so too for unfair competition under New Jersey law. *See Boehringer Ingelheim G.m.b.H. v. Pharmadyne Labs.*, 532 F. Supp. 1040, 1061 (D.N.J. 1980) (holding that trade dress infringement constitutes unfair competition under New Jersey law).

### 5. Common Law Trademark Infringement (Count 5)

Bambi Baby alleges that it has established common law trademark rights in the "look and feel" of the Bambi Baby Website through its "long and continuous use of the protected trade dress" on that site. Am. Compl. ¶ 83. Defendants' use of confusingly similar trade dress on the Treasure Rooms Website, according to Bambi Baby, infringes those trademark rights. *Id.* ¶ 84. Madonna does not separately address this Count in its brief, but appears to lump it in with the discussion of Plaintiff's Lanham Act trade dress infringement claim. Madonna Mot. Br. at 8-10 (acknowledging that "plaintiff is claiming the 'look and feel' of its, website as a trademark or trade dress under N.J.S.A. 56:4-1 [Count 2], common law trademark [Count 5] and § 43(a) of the Lanham Act [Counts 3 and 4]" (emphasis added)). Bambi Baby argues that Madonna has "not offered any argument" as to common law trademark infringement, and that consequently the claim must survive; Plaintiff also argues that it stated a claim by alleging that it "has established common law trademark rights in the 'look and feel' of the Bambi Baby website[.]" Pl. Opp. Br. at 15.

In New Jersey, liability for common law trademark infringement is established when a defendant violates the federal Lanham Act for trademark infringement. *Coach, Inc. v. Cosmetic House,* Civ. No. 10-2794, 2011 WL 1211390 at * 5 (D.N.J. March 29, 2011) ("liability for

trademark infringement under federal law is sufficient to establish common law trademark infringement"); *La Cena Fine Foods, Ltd. v. Jennifer Fine Foods*, No. CIV.A.01CV5746(JLL), 2006 WL 2014503, at *8 (D.N.J. July 18, 2006) (finding common law trademark infringement based on Lanham Act violation); *see also Barre-Nat'l, Inc. v. Barr Labs., Inc.*, 773 F. Supp. 735, 746 (D.N.J. 1991) ("the test for common law trademark infringement is the same as for federal trademark infringement").

Likewise when a plaintiff asserts a claim for Lanham Act trade dress infringement. *See Telebrands Corp. v. Newmetro Design, LLC*, No. CV 16-1981 (WHW-CLW), 2016 WL 8999932, at *12 (D.N.J. Nov. 10, 2016) (considering Lanham Act trade dress infringement claim together with common law trademark infringement claim). Because Bambi Baby has adequately pled trade dress infringement under the Lanham Act, it has also stated a claim for New Jersey common law trademark infringement of the "look and feel" of its website.

### 6. Tortious Interference (Count 6)

Madonna moves to dismiss Bambi Baby's claim for tortious interference. Madonna Mot. Br. at 15-17. In New Jersey, a plaintiff must allege four elements of a tortious interference claim: (1) the plaintiff must have a protected interest; (2) the defendant must have behaved with "malice"—that is, the defendant must have intentionally interfered with that protected interest without justification; (3) there must be a reasonable likelihood that the anticipated benefit from the protected interest would have been realized but for the interference; and (4) economic damage must have resulted. *Printing Mart–Morristown v. Sharp Electronics Corp.*, 116 N.J. 739, 751-52 (1989).

Madonna argues that Plaintiff's tortious interference claim should be dismissed as duplicative of its unfair competition count (Count 2), and because Bambi Baby has not alleged


all elements of the claim. Madonna Mot. Br. at 15-17. Plaintiff counters that it has pled all necessary elements of tortious interference, and that this claim should not rise and fall with its unfair competition one. Pl. Opp. Br. at 14-15.

To satisfy the third element of his tortious interference claim, Bambi Baby must "allege facts that show an existing or prospective economic or contractual relationship." *Advanced Oral Techs., L.L.C. v. Nutres Research, Inc.*, No. 10-5303, 2011 WL 198029, at *9 (D.N.J. Jan. 20, 2011). The "mere allegation of lost business does not suffice." *Id.* Rather, Bambi Baby must "identify [] specific lost or potential customers," *Am. Millennium Ins. Co. v. First Keystone Risk Retention Grp., Inc.*, 332 F. App'x 787, 791 (3d Cir. 2009)—that is, customers who would have bought baby furniture from Plaintiff but for Defendants' alleged interference. *See also Novartis Pharm. Corp. v. Bausch & Lomb, Inc.*, No. 07-5945, 2008 WL 4911868, at *7 (D.N.J. Nov. 13, 2008) ("At a minimum, a plaintiff must [ ] at least allege specific prospective contracts that were interfered with.").

Bambi Baby does not do so. Plaintiff alleges that it had "established relationships with numerous customers" and that Defendants' conduct "disrupted" those relationships. Am. Compl. ¶¶ 89-90. The Amended Complaint must go further, *see Canfield Sci., Inc. v. Melanoscan, LLC*, No. CV 16-4636, 2017 WL 2304644, at *5 (D.N.J. May 25, 2017) (dismissing tortious interference claim where plaintiff alleged "that 'Defendants . . . interfered with [plaintiff]'s current and prospective business relationships'" without specifying particular customers), but it does not. Plaintiff does not identify any "specific" customers that Defendants poached, nor any that Defendants prevented from reaching Bambi Baby in the first place. *Am. Millennium Ins. Co..*, 332 F. App'x at 791. Bambi Baby cannot establish the third element of its cause of action, and so has not stated a claim for tortious interference.

## CONCLUSION

Madonna's motion to dismiss (ECF No. 21) is granted in part and denied in part. Specifically, the motion to dismiss is granted as to Counts 4 and 6 and denied as to Counts 1, 2, and 5. Regarding Count 3, the motion to dismiss is denied as to the trade dress alleged in paragraph 21(a) of the Amended Complaint, and granted as to that alleged in paragraphs 21(b) and (c). An appropriate order follows.

DATE: 3 June 2019

William H. Walls
Senior United States District Court Judge